```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF KENTUCKY
                    SOUTHERN DIVISION
                      AT PIKEVILLE
```

**CIVIL ACTION NO. 2007-225 (WOB)**

SHEILA HUNT                                              PLAINTIFF

VS.                  **MEMORANDUM OPINION and ORDER**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT


   This matter is before the court on the plaintiff's motion for summary judgment (Doc. 10) and the cross-motion for summary judgment of the Commissioner (Doc. 11).

   In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298, 300(6th Cir. 2001)(citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

   In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social Security Act.  42 U.S.C. § 423(a)(1)(D).  The Act defines "disability" as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Id. at 534(citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990)(citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate she suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits ... physical or mental ability to do basic work activities." Id.(citing 20 C.F.R. §§404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if her impairment(s) does not prevent her from doing her past relevant work. Id. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the

2

national economy.  Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing that she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the ALJ's decision, the claimant was forty-four years old and she has a high school education.  She has no past relevant employment.  The claimant alleges she became disabled in June 1989 due to the effects of knee pain, arthritis, migraines, obesity, anxiety and nerves. (AR 82).  The claimant adopts the facts as stated by the ALJ:

> The claimant was examined by Dr. Stauffer On August 9, 2005. The claimant complained of constant knee pain for the last 16 years without any specific injury, but had no X-rays or diagnosis.  The claimant also complained of migraine headaches for six years.  She said she also has had a knot in her right flank for four to five years, but no evaluation.  The claimant said she has been depressed since her husband died in 2000.  Dr. Stauffer's examination revealed bilateral knee pain secondary to osteoarthritis, morbid obesity, hypertension, history of migraine headaches, right subcutaneous mass, and depression. (Exhibit 7F). . . .
>
> On August 30, 2005, the claimant presented to the ER with a complaint of a knot to the right upper quadrant.  The assessment was abdominal wall hernia and possible hypertension.  She was noted to be extremely obese (Exhibit 8F).  On April 26, 2006, she had surgery to remove the mass in her right upper quadrant (Exhibit 15F). No further problems were noted in the record . . . .
>
> The claimant was evaluated by Stuart Cooke, Ph.D. on September 1, 2005.  When asked what keeps her from working, the claimant said she has never worked and never looked for a job.  She further stated that pain would keep her from working.  The claimant indicated that she weighed at least 350 [pounds].  The claimant needs no help bathing or dressing.  Her daughter does most of the household chores, cooking and grocery shopping.  She socializes with neighbors and family.  She has not received any type of psychotropic medications and has never been treated by a mental health

3

> counselor. Dr. Cooke diagnosed depressive disorder and borderline intellectual functioning (Exhibit 9F). . . .
>
> On April 10, 2006, the claimant was evaluated by Dr. Puram, a Cardiologist. She had recently been diagnosed with hypertension and has a history of chest pain. She was strongly advised to lose weight, be on salt restriction, and exercise. Her echocardiogram showed an EF of 50%, mild mitral regurgitation, and dilated left ventricle (Exhibit 14F). On July 25, 2006, Dr. Mohan examined the claimant and suspected untreated sleep apnea, which could be exacerbating her cardiovascular disease (Exhibit 23F). On July 26, 2006, the claimant underwent heart catheterization, coronary arteriogram, and a CT angiogram, which was basically normal, with mild plaquing and mild atherosclerosis (Exhibit 24F). . . .

(AR 15-16).

At the hearing, the ALJ sought the testimony of the claimant and a vocational expert ("VE"). Upon hearing the testimony at the hearing and reviewing the record, the ALJ performed the requisite five-step evaluation for determining disability.

The ALJ determined at step one that claimant had not been engaged in substantial gainful activity since the onset of disability. At step 2, the ALJ determined that the claimant has the following severe impairments: lumbar spine pathology, obesity, knee pathology and hypertension. He specifically found that claimant's migraines, depressive disorder, borderline intellectual functioning and heart condition are non-severe impairments. At step 3, the ALJ determined that the claimant does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1. At step 4, the ALJ found that the claimant did not have any past relevant work.

4

At step 5, the ALJ found that the claimant has the residual functional capacity to perform light work that does not require more than occasional stooping, kneeling, crawling, climbing ramps or crouching.  The ALJ also found that the claimant should never climb ladders or scaffolds, but can frequently balance.  She can only occasionally operate foot controls with her lower extremities.

The ALJ, relying on the testimony of the VE, concluded that a significant number of jobs were available in the national economy that the claimant could perform[1] and, therefore, she was not disabled under the Act.

The claimant argues that the ALJ acted as his own medical expert in opining that her heart condition is a non-severe impairment.  The ALJ found, however, that the claimant's hypertension, obesity, and knee pathology were severe impairments.  Upon finding some severe impairments, the ALJ determined that the claimant had met step two of the sequential evaluation and continued on to the next step of the analysis.

The fact that the ALJ found some of claimant's impairments non-severe is legally irrelevant because the ALJ did find the claimant met her burden at step two.  Anthony v. Astrue, No. 07-

---

[1] The vocational expert testified that a person with an RFC as identified by the ALJ could perform the light occupations of product inspector (7,000 jobs regionally and 750,000 jobs nationally), machine tender (8,000 jobs regionally and 850,000 jobs nationally), and hand packager (7,000 jobs regionally and 800,000 jobs nationally) (AR 536).  She also testified that such a person could also perform the sedentary occupations of bench worker (4,000 jobs regionally and 290,000 jobs nationally), surveillance system monitor (6,000 jobs regionally and 650,000 jobs nationally), and grade sorter (3,000 jobs regionally and 250,000 jobs nationally).

5

3344, 2008 WL 508008, *5 (6th Cir. Feb. 22, 2008); Fisk v. Astrue, No. 06-4677, 2007 WL 3325869 *4 (6th Cir. Nov. 9, 2007); Riepen v. Commissioner of Social Security, 198 Fed. Appx 414, 415 (6th Cir. 2006); Mariaz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987).

This case is similar to Fisk v. Astrue, No. 06-4677, 2007 WL 3325869 *4 (6th Cir. Nov. 9, 2007). In Fisk, the Commissioner appealed the district court's finding that the ALJ committed reversible error at step two of the analysis by injecting his own lay opinion into the analysis that only some of the claimant's impairments were severe. Id. at *4. The Sixth Circuit reversed the district court, stating:

> When an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5. And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error." Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987). In Maziarz, the agency determined that the claimant suffered from several severe impairments but that his cervical condition was not severe. Id. Because the agency continued with the remaining steps in the disability determination and because the agency "properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity," the court held that any error at step two was harmless and that it was therefore "unnecessary to decide" whether the agency erred in failing to find that the claimant's cervical condition constituted a severe impairment.
>
> The same conclusion applies here. As in Maziarz, the ALJ decided that Fisk suffered from some severe impairments but that his remaining conditions were not severe. In the remaining steps of the disability determination, the ALJ "consider[ed] limitations and restrictions imposed by all of

6

> [Fisk]'s impairments," including his non-severe impairments. . . . Because the ALJ considered these impairments when determining Fisk's residual functional capacity, "[w]e find it unnecessary to decide" whether the ALJ erred in classifying the impairments as non-severe at step two.

Fisk, 2007 WL 3325869 at *4.

Thus, even if the claimant is correct that the ALJ should have classified her heart problem as a severe impairment, the ALJ's finding is not reversible error because he did consider all of the claimant's impairments, both severe and non-severe, in his analysis of the remaining steps of the evaluation process. (AR 116-18). See Riepen, 198 Fed. Appx. at 415.

The claimant appears to also argue that the ALJ was required to seek the advice of a medical advisor in determining if the claimant's heart condition was severe. As discussed above, however, the court need not address this issue because it finds the ALJ concluded that the claimant met the requirements at step two and moved on to the remaining steps of the analysis. Since the ALJ considered all of claimant's impairments in determining the claimants RFC, the ALJ's failure to find clamant's heart condition was a severe impairment is not reversible error.

The claimant also argues that the ALJ erred in considering the opinion of a non-examining source because he did not have claimant's complete medical file when he rendered his opinion. Specifically, claimant argues that the non-examining expert did not have Dr. Puram's medical records regarding her heart condition. The ALJ specifically discussed Dr. Puram's medical records in his decision and concluded that her heart condition

7

was stable and specifically noted that "the Cardiologist doesn't need to see her."  The court concludes that the ALJ considered claimant's heart condition and specifically her claim of heaviness in her chest in determining her RFC.  Thus, there is no evidence that Dr. Puram's medical records would have altered the medical experts conclusions or that they would have resulted in further restrictions on claimant's RFC.

Lastly, it is the responsibility of the Commissioner to determine whether a claimant is disabled.  42 U.S.C. § 405(b)(1).  The claimant has the burden to prove she is disabled.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  The plaintiff has not articulated how her heart condition further limits her RFC beyond that found by the ALJ.  Nor, has any medical expert of record opined that the claimant's RFC is more limited than found by the ALJ.

The court finds sufficient evidence exists to support the ALJ's RFC determination.  The ALJ did not ignore the claimant's non-severe impairments, but placed restrictions that took into account what she could still do.  The court finds that the ALJ's determination is supported by substantial evidence.

As discussed above, "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached."  Alexander v. Apfel, 17 Fed. Appx. 298

8

(6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

The court holds that the findings of the ALJ are supported by substantial evidence. Accordingly, the claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** as follows:

1. That the administrative decision be, and it hereby is, **affirmed** pursuant to sentence four of 42 U.S.C. § 405(g);

2. That the motion for summary judgment of the plaintiff (Doc. 10) be, and it hereby is, **denied**;

3. That the cross-motion for summary judgment of the Commissioner (Doc. 11) be, and it hereby is, **granted**; and

4. That a separate Judgment shall enter concurrently herewith, dismissing this action.

This 21st day of March, 2008.



Signed By:
William O. Bertelsman
United States District Judge

9